UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                         )
FANA BEYENE,                             )
          Plaintiff                      )
                                         )      CIVIL ACTION
          v.                             )      NO. 09-12005-WGY
                                         )
MICHAEL J. ASTRUE, as he is              )
Commissioner, Social Security            )
Administration,                          )
          Defendant.                     )
_____)


MEMORANDUM OF DECISION

YOUNG, D.J.                                    September 24, 2010

## I.    INTRODUCTION

Fana Beyene ("Beyene") brings this action against Michael J.
Astrue, Commissioner of the Social Security Administration (the
"Commissioner").  Beyene seeks to have this Court reverse or
remand the Commissioner's decision denying Beyene's application
for Social Security Disability Insurance Benefits ("SSDIB") and
Supplemental Security Income ("SSI").  Pl.'s Mot. Rev. Decision
of Commissioner, ECF No. 12.  The Commissioner moves for an order
affirming his final decision.  Def.'s Mot. Order Affirming
Decision of Commissioner, ECF No. 15.

### A.    Procedural Posture

Beyene applied for SSDIB and SSI in July 2007.  Admin. Tr.
("A.R.") at 65-66.  Both applications were denied at the initial

1

level of review on September 24, 2007.  Id. at 67.  Beyene then
filed a timely request for review by a federal reviewing
official.  Id. at 71.  On March 21, 2008, the federal reviewing
official again denied Beyene's application, finding Beyene not
disabled under the Social Security Act (the "Act").  Id. at 76.
Subsequently, Beyene filed a request for a hearing.  Id. at 85.
The hearing was held on May 5, 2008.  Id. at 13.  The hearing
officer issued a decision denying Beyene SSDIB and SSI on July 1,
2008.  Id. at 13-21.  The Decision Review Board did not act on
the decision within the allotted ninety days and the hearing
officer's decision became final.  Id. at 1.

Thereafter, Beyene filed her complaint in this Court against
the Commissioner on November 23, 2009.  Compl., ECF No. 1.  The
Commissioner filed his answer on February 2, 2010.  Answer, ECF
No. 9.

**B.   Facts**

1.   Age, Education and Work Experience

Fana Beyene was born in 1970.  She completed high school.
A.R. at 26.  She last worked on January 30, 2006, in her parent's
convenience store, where she worked part time, three days a week,
doing cashier and stocking work.  Id. at 26-27.  She did similar
work at a retail pharmacy.  Id. at 28.  She testified that most
of her work was as a hair-styling assistant, a job she performed
on and off for nine years.  Id. at 30-31.

2.   Medical Evidence

Records from the Boston Medical Center indicate that Beyene was seen at least two times in 2003 reporting problems with her son.  Id. at 374, 376.  On November 24, 2003, Mary Ann Whalen, a social worker, reported Beyene appeared depressed, with her thoughts racing.  Id. at 374.  Beyene returned a year later for two visits, in October and December 2004, following an incident of domestic abuse.  Id. at 368, 371.  At that time Beyene was diagnosed with major depressive disorder, recurrent, mild with a global assessment of functioning ("GAF") score of 55.  Id. at 370, 372-73.

On December 22, 2004, Beyene saw Dr. Anna Fitzgerald MD. Id. at 367.  She assessed Beyene as an oriented, warmly engaging person with intact memory, average intellect, good insight, depressed mood and suicidal thoughts, and diagnosed her with major depressive disorder, recurrent, moderate, with GAF of 55. Id. at 365-66.  When Beyene saw Dr. Fitzgerald on October 28, 2006, after a two year absence, her diagnosis, GAF, and mental status evaluation remained the same.  Id. at 335, 338.  At that time, Dr. Fitzgerald noted that Beyene was in recovery from cocaine and alcohol abuse and diagnosed polysubstance dependence in remission.  Id.

In October, 2006, Beyene saw Dr. Ian Kelleher.  Id. at 352. She reported a long history of crack cocaine abuse that ended

several months before the visit, and problems with her husband,
who was in jail.  Id.  At that time she was taking a course to
become a certified nurse practitioner.  Id. at 352-53.  Dr.
Kelleher noted, among other symptoms, low energy, depressed mood,
concentration difficulties and isolation.  Id. at 356.  His
diagnosis was major depressive disorder, recurrent, moderate,
polysubstance dependence in remission, and depressive disorder,
GAF 55.  Id. at 358.  Beyene returned to visit Dr. Kelleher four
times in October and November 2007.  Id. at 321, 325, 331, 348.
She reported that she was mostly concerned with getting custody
of her son, and was working on obtaining her own place to live,
which would make that possible.  Id. at 331, 349.  Later in
November her concerns centered around her son's behavioral
problems.  Id. 322, 326.  Beyene's diagnosis, GAF and mental
evaluation status remained the same.  Id. at 322, 326, 333, 349.

     When Beyene returned for a visit in January 2007 she
reported plans to go to Atlanta to live with her sister for some
time.  Id. at 318.  This was her major concern during her next
several visits.  Id. at 306, 310, 314.  At that time, Dr.
Kelleher assessed an increase of Beyene's GAF to 60.  Id. at 307,
311, 315.

     On February 5, 2007, Beyene saw Dr. Daniel Shaw, a
psychiatrist, so she could have an ample supply of medications
for her trip.  Id. at 300.  Dr. Shaw noted that she isolated

4

herself, had low energy, and was irritable at times.  <u>Id.</u>  He
described Beyene as an oriented person with intact memory,
average intellect, good insight, depressed mood and suicidal
ideation and determined her GAF score to be 60.  <u>Id.</u> at 301-02.

In July 2007, following her return from Atlanta, Beyene saw
Dr. Margaret Dolan.  <u>Id.</u> at 292.  Dr. Dolan assessed some signs
of depression, generally normal mental state and GAF at 60.  <u>Id.</u>
at 293-94.  In August 2007, Beyene told Dr. Dolan she had been
working on getting a job and eventually housing.  <u>Id.</u> at 286.
During her next visit, Beyene's major concern was her parents'
ultimatum that she divorce her husband.  <u>Id.</u> at 282.  Beyene's
diagnosis, GAF and mental status evaluation remained the same.
<u>Id.</u> at 282-83, 286-87.

In September, during her visit with Dr. Daniel Shaw, Beyene
reported remaining in the house most of the time because she was
threatened by her abusive spouse who was recently released from
jail.  <u>Id.</u> at 277.  The diagnoses and GAF score of 60 were
unchanged from prior notes.  <u>Id.</u> at 278.

Beyene resumed treatment with Mary Ann Whelan on November
29, 2007, after missing two appointments.  <u>Id.</u> at 272. Her
diagnosis and functional scores remained the same.  <u>Id.</u> at 274-
75.  In January 2008, Beyene returned and indicated an intent to
obtain Social Security and housing assistance, although her
father was offering to pay for a rented room.  <u>Id.</u> at 268-69.

5

On February 27, 2008, Beyene saw Eugene Uzogara, MD.  Id. at
485.  He noted that her mental condition stabilized on
medication; her GAF was assessed at 60.  Id. at 486-87.  In March
2008, during an appointment with Whelan, Beyene stated that her
parents had bought her a condo in Lynn and that she presently was
not working in preparation for her move, but planned to work
after she got settled.  Id. at 478-79.  The diagnosis and
functional scores remained the same.  Id. at 479.

Beyene resumed treatment at the Boston Medical Center on
October 29, 2008.  Id. at 418-22.  She was described as an
isolated and depressed former crack addict, who had lost
everything three years ago, and was trying to get her life back
on track.  Id. at 419.  Beyene's mental status exam was within
normal limits.  Id. at 421.  She was diagnosed with major
depressive disorder and cocaine abuse with a GAF score of 48.
Id. at 422.

3.   Opinion Evidence

On September 18, 2007, Sue Conley, Ph.D., the state agency
non-examining source, rendered an opinion regarding Ms. Beyene's
psychiatric condition.  Id. at 241.  She cited medical evidence
through July 2007.  Id. at 253.  Conley said that Beyene appeared
improved, although still symptomatic.  She was able to care for
her needs, travel about and relate appropriately to doctors; she
could comprehend, recall and follow simple directions.  Id. at

253.  Conley found that Beyene's affective disorder did not cause any significant impairment in her ability to do basic mental work activities.  Id. at 251.

On March 27, 2009, Michael Lozzi, Beyene's therapist, prepared a psychiatric evaluation for Beyene, cosigned by a Dr. Guttmacher.  Id. at 490-96.  She was diagnosed with major depression with psychotic features and attention deficit disorder (ADD).  Beyene was said to isolate herself.  Globally, her functioning was placed at 55-60.  Id. at 490.  Lozzi noted many features of affective disorder including: difficulty thinking, concentration, appetite disturbance, hallucinations and decreased energy.  Id. at 491.  He further marked numerous functional restrictions including: grooming and personal hygiene, shopping, cooking, communicating, getting along with friends, holding a job, independent functioning, completing jobs in a timely manner and concentrating.  Id. at 495.

At the hearing Edmund Calandra appeared as a vocational expert.  The hearing officer asked him to assume a hypothetical person with no physical limitations who "could understand and remember simple instructions, could concentrate for 2-hour periods of an 8-hour day on simple tasks.  Could interact appropriately with co-workers or supervisors and could adapt to simple changes in the work setting."  Id. at 46.  Calandra stated that work of a maid, packer, and a small parts assembler were

7

within the terms of this hypothetical person.  Id. at 46-47.
Upon being shown the functional limitations noted by Lozzi, he
testified that under these assumptions, Beyene could not work.
Id. at 48-49.

**II.  ANALYSIS**

    **A.  Standard of Review**

    This Court has the power to affirm, modify, or reverse a
decision of the Commissioner upon review of the pleadings and
record.  42 U.S.C. § 405(g).  Such review, however, is limited to
the extent that "[t]he findings of the Commissioner of Social
Security as to any fact, if supported by substantial evidence,
shall be conclusive."  Id.; see Nguyen v. Chater, 172 F.3d 31, 35
(1st Cir. 1999) (per curiam).  The substantial evidence standard
is met when "a reasonable mind, reviewing the evidence in the
record as a whole, could accept it as adequate to support [the
Commissioner's] conclusion."  Ortiz v. Sec'y of Health & Human
Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriquez v.
Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir.
1981)).

    This Court must, therefore, affirm the Commissioner's
decision, "even if the record arguably could justify a different
conclusion, so long as it is supported by substantial evidence,"
Rodriquez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3
(1st Cir. 1987) (per curiam), as it is solely the role of the

Commissioner – and not this Court – to make credibility determinations, factual inferences, and to resolve evidentiary conflicts.  <u>Ortiz</u>, 955 F.2d at 769.  This Court may overturn the Commissioner's denial of benefits, however, where he has "committed a legal or factual error in evaluating a particular claim."  <u>See</u> <u>Manso-Pizarro</u> v. <u>Sec'y of Health & Human Servs.</u>, 76 F.3d 15, 16 (1st Cir. 1996) (quoting <u>Sullivan</u> v. <u>Hudson</u>, 490 U.S. 877, 885 (1989)).

**B.   Social Security Disability Standard**

An individual is considered disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has promulgated a five-step sequential analysis to determine whether a claimant is disabled.  <u>See</u> 20 C.F.R. § 404.1520(a)(4).  The hearing officer, after considering all record evidence, must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a sufficiently severe impairment;

(3) whether the impairment meets or equals a listed impairment;[1]
(4) whether the claimant has the residual functional capacity
("RFC") to perform her past relevant work; and (5) whether the
impairment prevents the claimant from doing any other work
considering the claimant's age, education, and work experience.
Id.

To the first for steps, the claimant bears the burden of
showing that she is disabled within the meaning of the Act.
Sherwin v. Sec'y of Health & Human Servs., 685 F.2d 1, 2 (1st
Cir. 1982).  Once the claimant has established that she is unable
to return to her former employment, the burden shifts to the
Commissioner to prove the fifth step, i.e., that the claimant is
able to engage in a substantial gainful activity which exists in
significant numbers in the national economy.  Id.

C. **The Hearing Officer's Decision**

The hearing officer made the following findings of fact and
conclusions of law: (1) Beyene meets the insured status
requirements of the Act; (2) Beyene has not engaged in
substantial gainful activity since January 1, 2002; (3) Beyene
suffers from the severe impairment of depressive disorder; (4)

---

[1] If claimant's proffered impairment meets or exceeds a
listed impairment, the claimant is deemed disabled per se and the
inquiry ends.  Sanabria v. Astrue, No. 06-11380, 2008 WL 2704819,
at *2 (D. Mass. July 9, 2009) (Gertner, J.).

Beyene does not have an impairment, or combination of impairments, that meets or equals listed impairments; (5) Beyene has the RFC to perform the full range of work at all exertional levels with the following non-exertional limitations: ability to understand and remember only simple instructions, ability to concentrate for only two-hour periods over an eight-hour day on simple tasks, ability to interact appropriately with coworkers and supervisors, and ability to adapt to changes in her work setting; (6) Beyene is not capable of performing past relevant work; and (7) considering Beyene's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Beyene can perform.

Accordingly, the hearing officer determined that Beyene was not disabled under the Act at the fifth step of the disability analysis.  The hearing officer specifically mentioned the vocational expert's testimony that Beyene was able to hold a position as a maid, assembler, or packer.  Id. at 20.  The hearing officer's decision was grounded in his determination of Beyene's RFC as he described it in the hypothetical presented to the vocational expert.  Id.  The hearing officer based his determination of Beyene's RFC on a finding that Beyene's statements regarding her impairments' severity and this impact on her ability to work were not fully credible:

11

> After careful consideration of the evidence, the
> undersigned find that [Beyene's] medically determinable
> impairments could reasonably be expected to cause the
> alleged symptoms; however, [Beyene's] statements
> concerning the intensity, persistence and limiting
> effects of these symptoms are not credible to the extent
> they are inconsistent with the above residual functional
> capacity assessment.

Id. at 18.  He also pointed out that the treatment notes of

several of Beyene's therapists reflected only moderate

disability, evidenced by a GAF of 55-60.  Id.  The hearing

officer noted that familial reasons existed for her anxiety and

isolation, independent from her depression, and that she was able

to perform daily living activities.  Id.

The hearing officer considered two pieces of opinion

evidence and discounted both of them.  He gave "little weight" to

the opinion of Michael Lozzi, Beyene's therapist from Eliot

Community Human Services, that Beyene was severely limited in her

functional capacity as that opinion was inconsistent with

treatment notes and with Beyene's GAF of 55-60.  Id.  The hearing

officer also discounted the opinion of Sue Conley, the state

agency psychologist, because it was based on an incomplete

medical record.  Id. 18-19.

**D.   Challenge to the Hearing Officer's Decision**

Beyene challenges the hearing officer's conclusion that she

is able to engage in gainful employment on the basis, inter alia,

that the hearing officer impermissibly rendered an opinion as to

Beyene's RFC without the support of actual expert opinion.  <u>See</u>
Pl.'s Mem. Supp. Mot. Reverse ("Pl.'s Mem."), ECF No. 13.

A hearing officer, as a lay person, generally is not
qualified to interpret raw medical data to determine a claimant's
RFC.  <u>Manso-Pizarro</u>, 76 F.3d at 17.  If a claimant has put her
functional capacity sufficiently at issue, the hearing officer is
obliged to measure the claimant's relevant capabilities and "to
make that measurement, an expert's RFC evaluation is ordinarily
essential."  <u>Id.</u> (quoting <u>Santiago</u> v. <u>Sec'y of Health & Human</u>
<u>Servs.</u>, 944 F.2d 1, 7 (1st Cir. 1991)).  Thus, a hearing
officer's determination of a claimant's RFC made without any
assessment of RFC by an expert is unsupported by substantial
evidence and must be remanded to obtain further functional
evidence.  <u>See</u> <u>Perez</u> v. <u>Sec'y of Human & Health Servs.</u>, 958 F.2d
445, 446 (1st Cir. 1991) (per curiam).  Where the record is
devoid of an expert's determination of RFC, however, the hearing
officer is not precluded from rendering "common-sense judgments
about functional capacity based on medical findings, as long as
[he] does not overstep the bounds of a lay person's competence
and render a medical judgment."  <u>Gordils</u> v. <u>Sec'y of Health &</u>
<u>Human Servs.</u>, 921 F.2d 327, 329 (1st Cir. 1990).

Here, an expert's assessment of Beyene's RFC is not
completely absent from the record.  In September 2007, Conley, a

state agency psychologist, reviewed Beyene's medical record and concluded that her depressive disorder caused only mild limitations on her residual functioning.  A.R. at 241, 251.  In March 2009, Lozzi, Beyene's therapist, wrote an evaluation co-signed by Dr. Guttmacher concluding that Beyene had numerous limitations in the areas of daily living activities, social functioning and task performance including difficulties in concentration, ability to complete tasks and communicate clearly and effectively.  Id. at 490, 495-96.  The hearing officer made it clear, however, that he did not base his decision on either of these two opinions, but rather evaluated treatment notes, Beyene's GAF, and her testimony.  Id. at 18-19.  It thus can be concluded that the hearing officer's determination of Beyene's RFC was made without relying on an assessment of RFC by an expert.  This Court must therefore evaluate whether the evidence suggests to a lay person that Beyene's impairments are mild and pose no significant functional restrictions.  See Manso-Pazarro, 76 F.3d at 17-18.  If that is the conclusion of this Court, the hearing officer's decision must be upheld.  Id. at 18.  Otherwise, this action must be remanded for development of functional evidence as the hearing officer's decision was not supported by substantial evidence.  See id.

Beyene proffered evidence of her physical and psychological

14

impairments, e.g. Lozzi's evaluation, putting her functional
capacity to be gainfully employed at issue.  Despite this, and
based upon consideration of Beyene's credibility and
interpretation of treatment notes and GAF scores, the hearing
officer determined that Beyene was able to understand and
remember simple instructions, able to concentrate for two-hour
periods over an eight-hour day on simple tasks, interact
appropriately with coworkers and supervisors, and adapt to
changes in her work setting.  A.R. at 17-18.  This conclusion was
not obvious from the raw medical data, but required an
interpretation from one with more skill than a layperson.  The
hearing officer was not properly qualified to make this
determination about Beyene's RFC without the aid of an expert.
See Roberts v. Barnhart, No. 02-2349, U.S. App. LEXIS 12694 at
**4, **5 (1st Cir. June 30, 2003) (per curiam) (holding an expert
mental RFC assessment was required, despite evidence that
claimant's mental abilities were intact, due to evidence that
claimant had difficulties with maintaining attendance, following
through with a schedule, and leaving the house while depressed);
Rivera-Figueroa, 858 F.2d 48, 52 (1st Cir. 1988) ("Absent a
residual functional capacity assessment from an examining
psychiatrist, we do not think the [hearing officer] was equipped
to conclude that the claimant's condition was so trivial as to

impose no significant limitation on ability to work."); <u>Sanabria</u> v. <u>Astrue</u>, No. 06-11380, 2008 WL 2704819, at *5 (D. Mass. July 9, 2009) (Gertner, J.) (holding claimant's "symptoms were too complex and too prone to fluctuation to permit a common-sense lay assessment of her mental RFC").  Thus, the hearing officer's decision is unsupported by substantial evidence readily verifiable on the record as it stands.

Because the interrelationship of Beyene's severe psychological impairments may affect her RFC to perform work in the greater national economy, this Court remands this case to the Commissioner for development of evidence of Beyene's mental and physical functional ability.

## III.  CONCLUSION

The decision of the hearing officer is vacated and the case is remanded.  Accordingly, for all the reasons stated above, this Court GRANTS Coleman's motion as to her request for remand [ECF No. 12], and DENIES the Commissioner's motion for an order affirming the decision of the hearing officer [ECF No. 15].


SO ORDERED.

                                    /s/ William G. Young
                                    WILLIAM G. YOUNG
                                    DISTRICT JUDGE